UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CHELSIE LEKENS, ) | |
| JACOB LEKENS, ) | |
| OLIVIA LEE, ) | |
| ROBIN BANKS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:20-cv-00228-SEB-DML |
| ) | |
| SWIFTY FARMS, INC., ) | |
| ) | |
| Defendant. ) | |

# ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiffs Chelsie Lekens ("Mrs. Lekens"), Jacob Lekens ("Mr. Lekens"), Olivia Lee ("Ms. Lee"), and Robin Banks ("Ms. Banks") initiated this action on November 10, 2020, charging Defendant Swifty Farms, Inc. ("Defendant") with claims of sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as well as state law claims of abuse of process, malicious prosecution, and intentional infliction of emotional distress. [Dkt. 1.] On February 2, 2021, Defendant moved for dismissal of Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. 20.] For the reasons detailed in this entry, Defendant's motion to dismiss **is granted in part and denied in part.**

## Factual Background

Plaintiffs' claims are based on the following factual allegations, which we accept as true in ruling on Defendant's Motion to Dismiss. Mr. Lekens and Mrs. Lekens, a

1

married couple, were employed by Defendant from June through September 2018. Ms. Lee was also hired by Defendant to work during this same time. [Compl. ¶ 12.] As part of their employment, Mr. Lekens, Mrs. Lekens, and Ms. Lee were required to maintain residence on Defendant's premises, a horse farm located in Jackson County, Indiana. [Compl. ¶ 9.] Mr. Lekens, Mrs. Lekens, and Ms. Lee all met or exceeded the legitimate employment performance expectations of Defendant. [Compl. ¶ 11.]

On or about October 2018, Defendant hired David Brent Taylor ("Mr. Taylor") as a farm laborer, who subsequently moved onto Defendant's premises near Mr. Lekens, Mrs. Lekens, and Ms. Lee's residences. [Compl. ¶ 13.] Mr. Taylor had recently been released from prison and was on parole at the time of his employment. [Compl. ¶ 19.] Sometime after his hiring, Mr. Taylor began engaging in discriminatory and harassing behavior against Mrs. Lekens and Ms. Lee. [Compl. ¶ 14.] These behaviors included unwanted physical touching of the women's upper thighs, unwanted propositions for sex and dates, and threatening statements regarding weapons that Mr. Taylor owned. [Compl. ¶ 15.] Mr. Taylor also caused Mrs. Lekens and Ms. Lee to fear for their safety by sometimes physically cornering and isolating them. *Id.* He threatened retribution in the event that Mrs. Lekens or Ms. Lee ever reported the harassment. *Id.* All of Mr. Taylor's discriminatory and harassing behavior was based on Mrs. Lekens and Ms. Lee's female gender identity. [Compl. ¶ 16.]

After several such incidents of discriminatory and harassing behavior by Mr. Taylor, Mrs. Lekens consulted Mr. Lekens, who recommended that she and Ms. Lee complain to Defendant. [Compl. ¶ 17.] Mrs. Lekens and Ms. Lee thereafter lodged verbal

complaints with Defendant on at least two occasions. *Id.* Defendant took no action to address Mrs. Lekens and Ms. Lee's concerns. [Compl. ¶ 18.] Following Mrs. Lekens and Ms. Lee's complaints to Defendant, Mr. Taylor cornered Mrs. Lekens in a barn and directly threatened her. *Id.*

When Defendant failed to take any corrective action against Mr. Taylor, Mrs. Lekens and Ms. Lee contacted Mr. Taylor's parole officer and informed him of their concerns, [Compl. ¶ 19.], and approximately one week after Mrs. Lekens and Ms. Lee contacted Mr. Taylor's parole officer, several police officers arrived at Defendant's property. [Compl. ¶ 20.] Thereafter, the officers searched Mr. Taylor's home and arrested him. *Id.* Mr. Taylor was preliminarily charged with multiple parole violations. [Compl. ¶ 21.] However, Mr. Taylor's charges were eventually dropped, and he was released from jail. *Id.*

Mr. Taylor returned to Defendant's property to resume his residency there, and almost immediately, Defendant terminated Ms. Lee. [Compl. ¶¶ 21, 22.] Approximately one week later, Defendant also terminated Mr. Lekens and Mrs. Lekens. *Id.* Though initially giving no reason for the terminations, Defendant later claimed that they were due to Plaintiffs' filing of false reports with law enforcement. *Id.*

After learning of the terminations, Ms. Banks, who was Mrs. Leken's mother, contacted Defendant and left a message stating that she believed Defendant's actions were unlawful and that Plaintiffs would be hiring an attorney and pursuing claims for sex discrimination and retaliation against Defendant. [Compl. ¶ 25.] Before Plaintiffs were

3

able to do so, however, Defendant filed a lawsuit against Plaintiffs. [Compl. ¶ 26.] Two of the Defendant's claims were dismissed, and the remainder are pending. [Compl. ¶ 26.]

## Legal Analysis

### I. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))[1]. At minimum, a plaintiff is required to support its complaint with "'some specific facts.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Iqbal*, 556 U.S. at 678. How much specificity is required may vary from case to case, but "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley*, 671 F.3d at 616 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v.*

---

[1] Plaintiffs in their arguments rely heavily on the notice pleading standard espoused in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). [Dkt. 22.] We emphasize that the *Conley* standard has been abrogated by *Twombly* and *Iqbal*, and that Plaintiffs' allegations must meet the plausibility standards that those cases have set. *See Twombly*, 550 U.S. at 563.

*American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).

## II.  Discussion

Defendant moves for dismissal of all of Plaintiffs' claims against it. We analyze the sufficiency of each of Plaintiffs' claims below.

### A.  Sex Discrimination[2]

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). The Seventh Circuit has categorized employment termination as an "actionable, materially adverse employment action[]" within the meaning of Title VII. *Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). The Seventh Circuit has specified that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Luevano v. Wal-*

---

[2] We note that the Complaint alleges that only Mrs. Lekens and Ms. Lee were discriminated against on the basis of sex. Our analysis thus is limited to these two plaintiffs who are potentially entitled to recover for damages based on the alleged sex discrimination.

*Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (explaining that employers are presumed to be "familiar with discrimination claims and . . . how to investigate them, so little information is required to put the employer on notice of these claims.")

 Defendant seeks dismissal of this claim on the grounds that Plaintiffs have failed to allege that it committed any specific discriminatory acts. Rather, according to Defendant, Plaintiffs have conflated Mr. Taylor's alleged acts of harassment with allegedly discriminatory actions taken by an employer, thus mandating dismissal of this claim. The complaint is devoid of details supporting a claim of sex discrimination, says Defendant, though we do not agree with Defendant's assessment.

 The Supreme Court has made clear that in the context of sex discrimination, a plaintiff need not plead specific factual allegations. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992 (2002). Though, as the Seventh Circuit has observed, "there is some unresolved tension between *Swierkiewicz* and the [Supreme] Court's later decisions in *Twombly* and *Iqbal*," it has nonetheless affirmed its previous holdings that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) action against the plaintiff on the basis of her sex." *Luevano*, 722 F.3d at 1028 (7th Cir. 2013) (quoting *Tamayo*, 526 F.3d at 1084 ("We have previously stated, on numerous occasions, that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally.").

Accordingly, we hold Plaintiffs have satisfied this threshold requirement here by alleging that in October 2018, their employer, Swifty Farms, fired them on the basis of their sex. *Id. See, e.g., Herndon v. Hous. Auth. of South Bend, Ind.*, 670 F. App'x 417, 418 (7th Cir. 2016) (holding that a description of "the kind of discrimination . . . the timing of the alleged discrimination . . . and the identity of those responsible" is all that is needed to plead a Title VII claim of sex discrimination); *Tate v. SCR Medical Transp.*, 809 F.3d 343, 345-46 (7th Cir. 2015) (explaining that allegations of Title VII discrimination are held to an "undemanding standard" and reversing the dismissal of a complaint where the plaintiff alleged merely, "[d]uring my employment, I was subjected to sexual harassment. I complained to no avail"); *Tamayo*, 526 F.3d at 1081 (holding that allegations that plaintiff "had been subjected to adverse employment actions by Defendant on account of her gender" was sufficient to state a claim); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007) ("[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her [protected status], there is no further information that is both easy to provide and of clear importance to the claim.").[3]

In any event, Plaintiffs' complaint clearly is not devoid of corroborative facts. Plaintiffs have included allegations that Mr. Taylor continually harassed them on the basis of their sex, [Compl. ¶ 16.], that Defendant refused to investigate or correct Mr. Taylor's behavior, and that, ultimately, Plaintiffs were terminated on the basis of sex, all

---

[3] In addition, while both parties discuss the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, this standard is not applicable at the pleading stage. 411 U.S. 792, 802-5 (1973). The Supreme Court has emphasized that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Sweirkiewicz*, 534 U.S. at 510.

7

the while Mr. Taylor, their male counterpart, suffered no adverse employment action. [Compl. ¶¶ 18, 23.]. These facts bolster the sufficiency of Plaintiffs' claim for sex discrimination. *See Luevano*, 722 F.3d at 1018.

Defendant's Motion to Dismiss is **DENIED** with respect to Plaintiffs' allegations of sex discrimination under Title VII.

### B. Retaliation[4]

Plaintiffs allege that Defendant retaliated against them in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Title VII's prohibition against retaliation "makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII].'" *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e–3(a)). A claim of retaliation must allege "(1) that [the plaintiff] engaged in statutorily protected activity; (2) that his employer took a materially adverse action against him; and (3) that the protected activity and the adverse action are causally connected." *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018).

Defendant argues that Plaintiffs have provided no specific, factual allegations of harassment upon which retaliation giving rise to an actionable claim of retaliation, and that Plaintiffs' claims are therefore legally insufficient. However, in advancing this

---

[4] Defendant does not address in its motion to dismiss whether Mr. Lekens has standing to bring this Title VII action; however the Court recognizes that judicial opinions have upheld a third-party retaliation theory in cases such as these. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177 (2011). Such a theory is unavailable, however, to Plaintiff Banks, who was never employed by Defendant. Accordingly, her only recourse is through the state law claims.

argument, Defendants misstate the elements of a retaliation claim. The Seventh Circuit has held that "[i]n order for plaintiff's expression to be protected by section 2000e-3(a), the challenged practice need not actually violate Title VII. Instead, it is sufficient if the Plaintiff has a reasonable belief she is challenging conduct in violation of Title VII." *Luevano*, 722 F.3d at 1029 (quoting *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir. 1989)). Accordingly, a plaintiff "need not succeed on her sexual harassment claim to make out a prima facie case of retaliatory discharge." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).

    Under the Seventh Circuit's analytical standard, Plaintiffs' allegations satisfy both the first and the second elements of a retaliation claim. Both Mrs. Lekens and Ms. Lee's expressions of their concerns about Mr. Taylor constituted "statutorily protected expression (i.e., reporting or otherwise opposing conduct prohibited by Title VII, such as sexual harassment) . . ." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997) (internal quotes omitted). The termination of Mr. Lekens's, Mrs. Lekens's, and Ms. Lee's employment by Defendant thus constituted an adverse action taken by an employer. *See Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014). As for the third element, Plaintiffs allege that Defendant's offered justification of "'false reports' with law enforcement" is pretext for retaliating against them for their statutorily protected expression. [Compl. ¶ 22-24.] This allegation suffices to state a retaliation claim at the pleading and summary judgment stages. Even at the latter of these stages, "which requires more from the plaintiff than the pleading stage, '[t]o establish a *prima facie* case of retaliation, an employee need not present proof of a causal link between the protected

9

expression in which the plaintiff engaged . . . and the adverse employment action of which he is complaining." *Luevano*, 722 F.3d at 1029 (quoting *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003)).

Plaintiffs' complaint thus includes the three essential elements of a retaliation allegation. Therefore, Defendant's Motion to Dismiss is **DENIED** with respect to Plaintiffs' retaliation claim under Title VII.

### C. Abuse of Process

To succeed on a claim of abuse of process under Indiana law, a showing is required that a defendant utilized "the legal process . . . to achieve an end other than one which the process was designed to accomplish." *Central Nat. Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986). The two elements of an abuse of process claim are: (1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings. *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016). Indiana courts have identified "[t]he gravamen of [abuse of process] as not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *I.A.E., Inc. v. Hall*, 49 N.E.3d 138, 157 (Ind. Ct. App. 2015) (internal quotations omitted).

Defendant argues that Plaintiffs have alleged no facts that point to the legal process being used by it for an ulterior purpose, and that the improper purpose that Plaintiffs allege is not disclosed. Defendant's statements overlook the clearly stated ulterior motive included in Plaintiffs' factual allegations: "Defendant brought the law suit

not to seek damages for wrongs suffered, but rather to generate false leverage in the hopes that Plaintiffs would agree to drop their claims." [Compl. ¶ 28.] Plaintiffs also have alleged that Defendant filed its lawsuit after it was informed that Plaintiffs intended to bring their suit against it, creating at least a plausible inference of an ulterior motive on the part of Defendant. [Compl. ¶ 25-26.]

Assuming Plaintiffs succeed in presenting sufficient evidence to establish that Defendant intended to misuse the legal process to create leverage, it would satisfy the standard Indiana courts have applied in upholding an abuse of process claim. *See Nat'l Asset Consultants LLC v. Midwest Holdings-Indianapolis*, No. 1:18-cv-01616-JRS-DML, 2021 WL 1196192 at *10 (S.D. Ind. Mar. 30, 2021) (holding that a bank using the threat of a foreclosure legal proceeding on a party to convince them to accept a higher interest rate constitutes an abuse of process). Accordingly, Defendant's Motion to Dismiss with respect to Plaintiffs' allegations of abuse of process is **DENIED.**

### D. Malicious Prosecution

To succeed on a claim of malicious prosecution under Indiana law, a plaintiff must be able to prove that the defendant: "1) instituted or caused to be instituted an action against the plaintiff; 2) the defendant has acted with malice in doing so; 3) the defendant had no probable cause to institute the action; and 4) the original action was terminated in

the plaintiff's favor." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005).[5]

We agree with Defendant that Plaintiffs have failed to assert any allegations satisfying the fourth element of malicious prosecution. Rather, they simply point to the dismissal of two claims in the still-pending state litigation between the parties, but the Seventh Circuit has clearly stated that "[t]he simple dismissal of a complaint does not terminate the litigation." *Luevano*, 722 F.3d at 1020. Here, certain claims remain pending, and the dismissal of others may still be pursued on appeal. Accordingly, the litigation has not yet been terminated in Plaintiffs' favor. Plaintiffs cite no case law or other authority supporting a position to the contrary. We therefore **GRANT** Defendant's Motion to Dismiss Plaintiffs' claim of malicious prosecution.

### E. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must establish that the defendant (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013) (citing *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). Indiana courts apply a rigorous standard to establish extreme or outrageous conduct. *Westminster*, 992 N.E.2d at 870. In order for a defendant's conduct to be extreme or outrageous, it is not sufficient that "defendant has acted with an intent which is tortious or even criminal,

---

[5] We also note that malicious prosecution claims most often arise in the Fourth Amendment context, not employment cases.

or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind. Ct. App. 2005) (citation omitted). Rather, liability can be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 456-57. "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996) (quoting Restatement (Second) of Torts § 46 at 72-73). "In the appropriate case, the question [of whether conduct is extreme and outrageous] can be decided as a matter of law." *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999).

  Defendant's contention is correct that Plaintiffs' allegations, accepted as true, do not rise to the level of extreme or outrageous conduct sufficient to state a claim for intentional infliction of emotional distress under Indiana law. Plaintiffs' conclusory allegations that Defendant "engaged in extreme and outrageous conduct aimed at the Plaintiffs," that its conduct was "intentional and/or reckless," and that it "caused severe emotional distress to the Plaintiffs" fall short of the required mark of specifying any conduct by Defendant that reveals or otherwise proves its intent to inflict emotional distress. Plaintiffs do not identify any examples of emotional distress that Defendant allegedly caused, or point to a causal link between any alleged conduct and Plaintiffs' emotional distress.

A claim for intentional infliction of emotional distress cannot survive on the threadbare assertions made by Plaintiffs, especially in light of the high evidentiary bar set by Indiana courts for establishing this wrong. *See Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012) (finding no extreme or outrageous conduct where bank security officer accused employee of fraud, "shouted directly in [the employee's] face that [the employee's husband] was 'garbage' and a 'piece of shit'"); *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (finding no intentional infliction of emotional distress where defendant repeatedly grabbed for his holstered gun, shook the gun, and threatened to "jump astraddle" of the plaintiff); *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001) (finding defendant's actions were not extreme or outrageous where he "accused [plaintiff] of substance abuse, shoplifting, and dishonesty in a gruff and intimidating manner"). Thus, Defendant's Motion to Dismiss is **GRANTED** to the extent that Plaintiffs' claim for intentional infliction of emotional distress is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 20] is **granted in part and denied in part.** The counts of Malicious Prosecution (Count IV), and Intentional Infliction of Emotional Distress (Count V) are dismissed without prejudice, with leave to replead in twenty-one days. The Counts asserting Title VII sex discrimination, retaliation, and abuse of process are legally sufficient and will remain as parts of this litigation.

IT IS SO ORDERED.

Date:  8/4/2021

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

14

Distribution:

Samuel Mark Adams
JOHN H. HASKIN & ASSOCIATES, LLC
sadams@jhaskinlaw.com

W. Brent Gill
SMITH LAW SERVICES PC
wbrentgill@comcast.net

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Jason M. Smith
SMITH LAW SERVICES, P.C.
jason.smith@smithlawservices.com

Keenan D. Wilson
JOHN H. HASKIN & ASSOCIATES, LLC
kwilson@jhaskinlaw.com